## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JESSICA S. HANKE, | |
| *Plaintiff*, | |
| v. | Civil No.: 1:23-cv-02130-JRR |
| UNITED PARCEL SERVICE, INC., | |
| *Defendant*. | |

### MEMORANDUM OPINION

Plaintiff Jessica S. Hanke initiated this action against Defendant United Parcel Service, Inc., alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Maryland Fair Employment Practices Act ("MFEPA"). Pending now before the court is Defendant's Partial Rule 12(c) Motion to Dismiss. (ECF No. 18; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023) For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

## I.    BACKGROUND

This action arises from Plaintiff's employment with Defendant as a part-time Pre-Load Worker at its Salisbury, Maryland facility beginning October 28, 2016.[1] (ECF No. 1 ¶ 4; the "Complaint.") At Defendant's Salisbury facility, "women were typically relegated to [part-time pre-load] positions while driver positions," positions that were full-time and paid a higher hourly wage, were "typically reserved for men." *Id.* ¶ 6. After she began her employment, Plaintiff "repeatedly sought out and inquired about a full-time Driver position."[2] (ECF No. 18-1 at 2.) In

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).
[2] As discussed *infra*, the court will also consider the EEOC Charge (and the Amended EEOC Charge) in ruling on the Motion. *See* Section II.A.

August 2017, Plaintiff "had achieved sufficient seniority to be offered the opportunity to qualify for a position as a driver," so she sought a promotion to a driver position.  (ECF No. 1 ¶ 7.) Defendant, however, did not promote Plaintiff; Plaintiff contends that Defendant, contrary to its treatment of male applicants, "set [her] up to fail" by shortening her qualifying period, enlarging her delivery area, and increasing her packing load (the "August 2017 Denial of Promotion").[3]  *Id.* Defendant informed Plaintiff that she could try to qualify again the next year.  *Id.*

On April 25, 2018, UPS offered Plaintiff a full-time position as a Pre-Load Supervisor, which Plaintiff accepted.  *Id.* ¶ 8.  That same day, Defendant issued a driving bid list[4] for which Plaintiff would have qualified if she had not had already accepted the offer for Pre-Load Supervisor.  *Id.*  Subsequently, on May 9, 2018, after the bid list had been removed, Defendant withdrew Plaintiff's offer for the Pre-Load Supervisor position because "there were already too many Pre-Load Supervisors" (the "May 2018 Offer Withdrawal").  *Id.*  Defendant thus "relegate[d] [Plaintiff] to a poorly paid, part time position off the road."  *Id.*  During that time, male applicants on the driving bid list were "given more favorable conditions than those offered to" Plaintiff. (ECF No. 1 ¶ 9.)  In addition, one male applicant was able to qualify for a driver position without undergoing any qualification process.  *Id.*

Plaintiff then filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 6, 2018, alleging a continuous action of discrimination based on sex, with the earliest discrimination occurring on August 6, 2017, and the latest discrimination occurring on May 9, 2018 (the "EEOC Charge").  (ECF No. 18-1 at p. 2.)  In her EEOC Charge, Plaintiff focused on the August 2017 Denial of Promotion and May 2018 Offer Withdrawal, and

---

[3] Although Plaintiff's Complaint identifies this denial of promotion as occurring in November 2017, both parties appear to acknowledge, and the EEOC Charge reflects, that this occurred in August of 2017.  (ECF No. 18-1 at p. 2; ECF No. 18 at p. 2 n.1; ECF No. 21-1 at p. 4.)
[4] The Complaint explains that a "driving bid list" pertains to qualifying for "driver positions."  (ECF No. 1 ¶ 8.)

alleged that male employees were given more favorable treatment in qualifying for driver positions.  (ECF No. 1 ¶ 10; ECF No. 18-1 at p. 2.)  Plaintiff also stated: "I do not believe any female drivers have been hired in the past 10 years." (ECF No. 18-1 at p. 2.)  On August 27, 2018, UPS received notice of the EEOC Charge.  (ECF No. 1 ¶ 10.)

On August 31, 2018, UPS informed Plaintiff that she was again eligible to re-enter the qualification process to become a full-time driver.  *Id.*  UPS subsequently disqualified Plaintiff at the end of her qualification period, on November 7, 2018, purportedly for "failing to deliver air packages, even though the air packages went undelivered only because a male supervisor had hidden them in the wrong area of her truck and [her] distress call went without response for an hour" (the "November 2018 Denial of Promotion").  *Id.* ¶ 11.  (ECF No. 18-1 at p. 5.)  On November 11, 2018, Plaintiff amended her EEOC Charge to include a claim of retaliation and the November 2018 Denial of Promotion.  (ECF No. 18-1 at p. 4–5; the "Amended EEOC Charge".)  On April 1, 2019, "[o]ut of economic necessity and frustration at her mistreatment," Plaintiff resigned her position with Defendant.  (ECF No. 1 ¶ 12.)  EEOC issued Plaintiff a Right to Sue letter on June 7, 2023.  (ECF No. 1-1 at p. 2–3.)

Plaintiff initiated the instant action against Defendant on August 7, 2023, asserting the following claims: sex discrimination[5] in the terms and conditions of employment in violation of Title VII and MFEPA (Count I); retaliation in violation of Title VII and MFEPA (Count II); and constructive wrongful discharge in violation of Title VII and MFEPA (Count III).  (ECF No. 1 at ¶¶ 13–24.)  Defendant now moves for partial dismissal of Plaintiff's Complaint.  (ECF No. 18.)

---

[5] Plaintiff uses the phrase "gender discrimination" in her Complaint.  Consistent with the language of Title VII and MFEPA, the court uses the phrase "sex discrimination" to refer to what Plaintiff refers to as "gender discrimination." *See* 42 U.S.C. § 2000e-2; MD. CODE ANN., STATE GOV'T § 20-606.

## II.     LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(c)

A party may move for judgment on the pleadings after the pleadings are closed, so long as the motion is made early enough so as not to delay trial.  FED. R. CIV. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard applicable to motions to dismiss under Rule 12(b)(6)."  *Green v. Sw. Credit Sys., L.P.*, 220 F. Supp. 3d 623, 624 (D. Md. 2016) (citing *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)).  Like a Rule 12(b)(6) motion, a Rule 12(c) motion, does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, in considering a Rule 12(c) motion, the court "assume[s] all well-pled facts to be true and draw[s] all reasonable inferences in favor of" the non-moving party.  *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016).  The court "may also accept as true factual allegations in the Answer[], but only where they do not contradict the allegations in the Complaint."  *Al-Sabah v. World Bus. Lenders, LLC*, No. CV SAG-18-2958, 2020 WL 3868989, at *8 (D. Md. July 9, 2020).[6] "A motion for judgment on the pleadings pursuant to Rule 12(c) . . . should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief."  *United States v. Castillo*, No. 8:19-CV-3459-PWG, 2021 WL 825974, at *3 (D. Md. Mar. 4, 2021) (citing *Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 735 (E.D. Va. 2002), *aff'd*, 368 F.3d 379 (4th Cir. 2004)).

---

[6] This is based on the rationale that a plaintiff is not "required to reply to defendant's answer," and so "all allegations in the answer are deemed denied." *First Protective Ins. Co. v. Rike*, 516 F. Supp. 3d 513, 524 (E.D.N.C. 2021) (citation omitted); *see Lefkoe v. Jos. A. Bank Clothiers*, No. CIV.WMN-06-1892, 2008 WL 7275126, at *3 (D. Md. May 13, 2008) ("[T]the factual allegations in the answer also may be taken as true to the extent they have not been denied or do not conflict with the complaint." (citation omitted)); and FED. R. CIV. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided.").

In support of its Motion, Defendant attaches Plaintiff's two EEOC charges. (ECF No. 10-1.) Defendant also directs the court to a Collective Bargaining Agreement ("CBA") attached to its answer. (ECF No 4-1.) As with a Rule 12(b)(6) motion, the court generally does not consider evidence outside of the complaint when ruling on a Rule 12(c) motion. The court may, however, consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). In the employment discrimination context, courts regularly conclude that EEOC charges are integral to a plaintiff's complaint.[7] *See, e.g.*, *Virella v. M.B.G. Enterprises Inc.*, No. CV RDB-21-1844, 2022 WL 36452, at *2 (D. Md. Jan. 4, 2022); *McKenzie-El v. Ports of Am.*, No. CV ELH-19-1980, 2020 WL 1185193, at *7 (D. Md. Mar. 12, 2020); *Carter v. Montgomery Cnty., Maryland*, No. CV TDC-18-2249, 2019 WL 3804765, at *2 (D. Md. Aug. 13, 2019); *Bowie, v. Univ. of Maryland Med. Sys.*, No. CIV.A. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015); *Garey v. Wal-Mart Stores E., LP*, No. CIV.A. MJG-15-778, 2015 WL 5157475, at *1 n.2 (D. Md. Sept. 1, 2015).

In determining whether it may consider a document attached to an answer in ruling on a Rule 12(c) motion, relying on analysis of the Eleventh Circuit, this court previously employed the "integral" standard applicable to Rule 12(b)(6) motions. *Lefkoe*, 2008 WL 7275126, at *4–5

---

[7] The court may also take judicial notice of matters in the public record and publicly available information on state and federal government websites. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017). Notably, courts have also held that they may take judicial notice of EEOC charges and EEOC decisions without converting a motion to dismiss into one for summary judgment. *Yampierre v. Baltimore Police Dep't*, No. CV ELH-21-1209, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (quoting *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)).

(quoting *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)).  The *Lefkoe* court concluded the integral analysis "was warranted because '[o]therwise, the conversion clause of Rule 12[(d)] would be too easily circumvented and disputed documents attached to an answer would have to be taken as true at the pleadings stage.'"  The court thus concluded that "only those documents incorporated by reference into the complaint may be considered in ruling on a motion for judgment on the pleadings."  *Id.* (quoting *Horsley, supra*).  This logic and reasoning is similarly compelling here and the court adopts it.

Here, Plaintiff's EEOC charges are expressly referenced in the Complaint, they are integral to her allegations (inasmuch as her entitlement to pursue this action arises in part from exhaustion of her administrative remedies), and there is no challenge as to their authenticity.  The court will therefore consider them in ruling on the Motion.  (ECF No. 1 ¶¶ 3, 10, 18.)  The court, however, declines to consider the CBA attached to Defendant's answer, because it is not integral to the Complaint, inasmuch as the CBA does not give rise to legal rights asserted.[8]  *See Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d. at 611, *supra*.

## III.   ANALYSIS

In its Motion, Defendant argues that (1) Plaintiff's MFEPA claims are time barred; (2) Plaintiff failed to exhaust her administrative remedies as to her constructive discharge claim; and (3) Plaintiff fails to state a claim upon which relief can be granted as to the August 2017 Denial of Promotion and the May 2018 Offer Withdrawal to the extent Plaintiff's Title VII sex discrimination and retaliation claims rely on these alleged events.  (ECF No. 21 at p. 5–11.)

---

[8] Defendant avers that the CBA is "central" to Plaintiff's Complaint.  This is a conclusory assertion based solely on Defendant's interpretation of alleged facts.  The Complaint makes no reference to the CBA, explicit or implicit, and Plaintiff's asserted statutory rights do not arise from it.

### A.  MFEPA Claims

Defendant first argues that Counts I, II, and III, as they relate to MFEPA, are time-barred. (ECF No. 18 at 3–6.)  Plaintiff counters that her MFEPA claims are not time-barred pursuant to the statutory tolling exception set forth in section 20-1013(a)(2) of the State Government article of the Maryland Code.  (ECF No. 21-1 at 3–4.)

Under MFEPA, an employer may not "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment" or "limit, segregate, or classify its employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee" because of, relevant here, the individual's sex.  MD. CODE ANN., STATE GOV'T § 20-606(a)(1). Similarly, MFEPA prohibits an employer from discriminating or retaliating "against any of its employees" because that individual has either "opposed any practice prohibited by [MFEPA]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [MFEPA]."  *Id.* § 20-606(f).

A plaintiff alleging unlawful disparate treatment discrimination or retaliation in violation of MFEPA must initiate a civil action within two (2) years after the alleged unlawful employment practice occurred.[9]  *Id.* § 20-1013(a)(1)(iii).  Before initiating such action, a plaintiff must first have "filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the [employer]," and "at least 180 days [must] have elapsed since the filing of the administrative charge or complaint."  *Id.* § 20-1013(a)(1). Thus, MFEPA,

---

[9] A three-year statute of limitations exists for a claim of harassment in violation of MFEPA.  MD. CODE ANN., STATE GOV'T § 20-1013(a)(1)(iii)(2).  Plaintiff does not assert a claim of harassment and acknowledges that the two-year statute of limitations applies to her claims.  (ECF No. 21-1 at p. 3.)

like Title VII, requires "a plaintiff alleging employment discrimination to exhaust administrative remedies before filing their lawsuit, or else the claim is time barred." *Bush v. Frederick Cnty. Pub. Sch.*, No. 23-1127, 2024 WL 639255, at *3 (4th Cir. Feb. 15, 2024) (citing *Watson v. Bd. of Educ. for Prince George's Cnty.*, No. 2006, Sept. Term, 2019, 2021 WL 4893594, at *16 (Md. Ct. Spec. App. Oct. 20, 2021)). With respect to the exhaustion requirement, "[t]imeliness [is] to be strictly enforced." *Bales v. Maryland Judiciary/Admin. Off. of the Cts.*, No. 15-CV-03293-JFM, 2016 WL 6879902, at *8 (D. Md. Nov. 22, 2016) (quoting *Tangires v. Johns Hopkins Hosp.*, 79 F. Supp. 2d 587, 597 (D. Md. 2000)). Notably, in October 2022, section 20-1013 of the State Government article was amended to provide that the statute of limitations "shall be tolled while an administrative charge or complaint" is pending. MD. CODE ANN., STATE GOV'T § 20-1013(a)(2); S.B. 451, 444 Gen. Assembl. (Md. 2022)

Plaintiff's allegations concern purported discrimination that culminated in her constructive discharge on April 1, 2019. (ECF No. 1 ¶ 12.) This action was initiated on August 7, 2023, more than four (4) years after the purported unlawful employment practices. *Id.* Acknowledging that her MFEPA claims are otherwise time-barred absent tolling, Plaintiff asserts that the tolling provision of section 20-1013 applies to her claims. (ECF No. 21-1 at p. 3–4.)

The Supreme Court of Maryland has "'long adhered to four principles' concerning retroactivity of statutes":

> (1) statutes are presumed to operate prospectively unless a contrary intent appears;
> (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective;
> (3) a statute will be given retroactive effect if that is the legislative intent; but
> (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws.

*Est. of Zimmerman v. Blatter*, 458 Md. 698, 728 (2018) (quoting *Pautsch v. Md. Real Estate Comm'n*, 423 Md. 229, 263 (2011)); *see Allstate Ins. Co. v. Kim*, 376 Md. 276, 289 (2003) (same). Courts thus employ a two-part test to determine whether a statute applies retroactively: (1) "determine whether the [General Assembly] intended the statute to have the kind of retroactive effect that is asserted," and, if so, then (2) "examine whether such effect would contravene some Constitutional right or prohibition." *Blatter*, 458 Md. at 728 (quoting *Pautsch*, 423 Md. at 263–64). There are two exceptions to the presumption that a statute applies prospectively: (1) statutes that effect a change in "procedure only, and not in substantive rights," and (2) "statutes 'that have remedial effect and do not impair vested rights.'" *Id.* at 728–29 (quoting *Langston v. Riffe*, 359 Md. 396, 406–407 (2000) and *Gregg v. State*, 409 Md. 698, 715, (2009)).

While the Supreme Court of Maryland has not yet opined on whether the 2022 MFEPA tolling amendment applies retroactively, this court has previously analyzed the issue. In *Nance v. Clerk of Circuit Court for Baltimore City*, the plaintiff similarly argued that the 2022 amendment "save[d]" his MFEPA claims from being time-barred. No. 1:23-CV-01869-JMC, 2023 WL 8650346, at *10 (D. Md. Dec. 14, 2023). The court concluded that "[l]ooking at the plain language of the statute, there is no clear intention on the part of the General Assembly to have this provision operate retroactively." *Nance v. Clerk of Cir. Ct. for Baltimore City*, No. 1:23-CV-01869-JMC, 2023 WL 8650346, at *10 (D. Md. Dec. 14, 2023). This court agrees. There is no language in the statute based on which the court may infer that the Maryland General Assembly intended retroactive application of the amendment. *See Blatter*, 458 Md. at 728, *supra*. And Plaintiff does not direct the court to evidence of such intent.[10] Without such language upon which to base an

---

[10] In fact, there is language in the legislative record that suggests the legislature did not intend for retroactive application of the tolling amendment. *See* S.B. 451, 2022 Leg., Reg. Sess., Fiscal and Policy Note (Md. 2022) (discussing the potential fiscal effect of the proposed tolling amendment and noting that "[a]ny potential impact may be mitigated to the extent that, under the current law," a plaintiff could terminate her administrative proceeding and

inference of legislative intent in favor of retroactivity, the presumption of prospective application applies.

Even were the court to find that the tolling amendment has a procedural or remedial effect, *cf. Doe v. Roe*, 419 Md. 687, 705–706 (2011) (holding that enactment of a statute extending the statute of limitations was procedural and remedial and thus given retrospective application to the claims not yet barred by the previous statute of limitations), the court's conclusion would be unchanged. As explained above, MFEPA's tolling provision was enacted in October 2022, more than three years after Plaintiff's most recent alleged unlawful employment practice of April 1, 2019. In order for the MFEPA tolling provision to save Plaintiff's MFEPA claims, she would need more than retroactive application; she would also need the tolling provision to revive her claims that had been extinguished for over a year at the time of the amendment's enactment. *See id.* at 707 n.18 (explaining that a remedial or procedural statute may not be applied retroactively if such application would interfere with vested or substantive rights, and noting that an individual does not have a vested right to be free from suit until the statute of limitations has expired (citations omitted)); *Blatter*, 458 Md. at 730 ("[W]here a statute is determined to effect only changes to procedures or remedies, and thus is to be applied retroactively, such a statute 'ordinarily applies to all actions[,] whether accrued, pending[,] or future, unless a contrary intention is expressed[.]'") (quoting *Langston*, 359 Md. at 407 (cleaned up)). A statute cannot be applied retroactively where it would interfere with a defendant's vested right to be free from suit. *See Blatter*, 458 Md. at 730 ("Importantly, even if a statute is procedural or remedial, this does not completely address whether th[e] statute may be applied retroactively. Generally, a remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights." (citations omitted)).

---

"file a private action in circuit court if at least 180 days have elapsed since filing the administrative charge or complaint").

The court finds no evidence of legislative intent for retroactive application of the MFEPA tolling provision or any other basis on which to conclude that the MFEPA tolling provision applies retroactively to revive Plaintiff's claims.

Plaintiff's reliance on the Fourth Circuit's opinion in *Kolomick v. United Steelworkers of America, District 8 AFL-CIO*, 762 F.2d 354 (1985), does not, in the opinion of this court, advance her cause. There, the Fourth Circuit remarked in *dicta* that the filing of an administrative complaint "normally" tolls limitations "where the existence of the agency proceeding conditions or prevents the pursuit of the court action," like Title VII claims with an EEOC exhaustion requirement; the court juxtaposed this general principal with its express holding as to Mr. Kolomick's action: where a plaintiff pursues "hybrid" relief (there, claims for wrongful discharge under the National Labor Relations Act and a Labor Management Relations Act § 301 claim), the filing of an administrative claim (there, the NLRB claim) does not toll limitations of a companion claim (the § 301 claim) where the companion claim (*i.e.*, the claim not subject to administrative exhaustion) may be pursued as a parallel proceeding such that the administrative and judicial actions are pursued simultaneously in their respective forums. 762 F.2d at 355–57. *Kolomick's* 1985 *dicta* regarding the general operation of tolling in the Title VII context does not address or counter the extensive and on-point analyses provided by *Blatter* and *Nance*, and cases cited therein, on the retroactivity (or lack thereof) of the tolling amendment.[11]

---

[11] To the extent Plaintiff's opposition intends to mount an equitable tolling argument, "[t]he discretionary equitable tolling doctrine applies when (1) a defendant wrongfully prevents a plaintiff from asserting her claims, or (2) extraordinary circumstances beyond the plaintiff's control prevent her from filing on time." *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 660–61 (4th Cir. 2018) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (discussing equitable tolling of the two-year statute of limitations governing the plaintiff's MFEPA claims). "[E]quitable tolling 'must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Id.* at 661 (citing *Harris*, 209 F.3d at 330). Ignorance of the law, misconception, or mistake do not constitute an "extraordinary circumstance." *Id.* (citations omitted). Neither circumstance is present here. Plaintiff does not allege that Defendant prevented her from asserting her claims and presents no "extraordinary circumstance" beyond her control. Accordingly, equitable tolling does not apply.

Because, as both Plaintiff and Defendant agree, Plaintiff's MFEPA claims are subject to a two-year statute of limitations, and no tolling exception applies, Counts I, II, and III will be dismissed to the extent they assert claims under MFEPA.

## B. Title VII Principles

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326-27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination.").  "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, [she] may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). Pursuant to *McDonnell Douglas*, Plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

Under Title VII, a plaintiff must exhaust administrative remedies prior to bringing suit in court. *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b)) ("It is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC.").  Although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt." *Jackson*

*v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022); *see Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 550 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast"). Generally, a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct. 42 U.S.C. § 2000e–5(e)(1). "This period is extended to 300 days in a deferral state," like Maryland, where "state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F. Supp. 2d 658, 662 n.4 (4th Cir. 2007) (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004)); *see Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 777 (D. Md. 2020) (noting Maryland is a deferral state).

An EEOC charge serves two important purposes: (1) "it notifies the charged party of the asserted violation;" and (2) "it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law." *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984). In *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401 (4th Cir. 2013), the court explained the EEOC process:

> An employee complaining of illegal discrimination must first contact the EEOC and present it with information supporting the allegations. After receiving an employee's intake questionnaire and any other information the employee has provided, the EEOC typically assists the employee with filing a charge. This assistance often includes drafting a charge—as it did here—and then asking the employee to sign it.
>
> The EEOC sends a notice and copy of the charge to the employer. This notice gives the employer the chance to voluntarily conduct its own investigation and attempt to resolve any discriminatory actions internally. Concurrently, the EEOC investigates the charge.
>
> The filing of a charge also "initiates agency-monitored settlement, the primary way that claims of discrimination are resolved." This procedure "reflects a congressional intent to use administrative

conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." Prior to making any determination as to the merit of a charge, the EEOC may encourage and facilitate settlement between the parties.

If the EEOC finds "reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." If the EEOC cannot reach a voluntary settlement with the employer, the agency may file a lawsuit or issue a Notice–of–Right–to–Sue to the employee. If the EEOC does not make a reasonable cause determination or the employee requests a right to sue, the agency may issue one, thus allowing the employee to file suit.

*Id.* at 407 (citations omitted).  The exhaustion requirement, therefore, is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit."  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).  Rather, it "serves a vital function in the process of remedying an unlawful employment practice."  *Balas*, 711 F.3d at 407.

Generally, "a plaintiff fails to exhaust [her] administrative remedies where . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit."  *Chacko*, 429 F.3d at 506.  In determining whether a plaintiff has exhausted her claims, the court should look to claims raised in the administrative complaint, as well as claims "that would naturally have arisen from an investigation thereof."  *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).  "[W]hen the claims in her court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative [complaint],' they are procedurally barred."  *Id.* (quoting *Chacko*, 429 F. 3d at 508–10)). In *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit. The allegations contained in the

> administrative charge of discrimination generally limit the scope of
> any subsequent judicial complaint. [F]actual allegations made in
> formal litigation must correspond to those set forth in the
> administrative charge. Only those discrimination claims stated in
> the initial charge, those reasonably related to the original complaint,
> and those developed by reasonable investigation of the original
> complaint may be maintained in a subsequent Title VII [] lawsuit.

*Id.* at 172 (citations omitted). The court also recognizes that administrative charges "often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). The court, however, is not "at liberty to read into administrative charges allegations they do not contain." *Id.*

### C. Title VII Claims

#### 1. *Constructive Discharge*

Defendant argues that Plaintiff failed to exhaust her administrative remedies for constructive discharge by failing to include such a claim in her EEOC charges. (ECF No. 18 at 6-8.) Plaintiff avers that her constructive discharge claim has been exhausted even though it was not alleged in the EEOC charges because it was the "predictable culmination of the earlier alleged course of discriminatory conduct." (ECF No. 21-1 at p. 5 (citations omitted)).

"A claim of constructive discharge arises when an employee resigns because the 'circumstances of discrimination' made the employee's working conditions 'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *U.S. Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 753 (D. Md. 2021) (quoting *Green v. Brennan*, 578 U.S. 547, 560 (2016). As a discrete discriminatory act, constructive discharge requires administrative exhaustion. *Spencer v. Ashcroft*, 147 F. App'x 373,

375 (4th Cir. 2005) (citing *Young v. Nat'l Ctr. for Health Serv. Research*, 828 F.2d 235, 237–38 (4th Cir. 1987)).

As Plaintiff notes, courts have found that a constructive discharge claim may be considered exhausted where it is the "predictable culmination" of the alleged discriminatory behavior contained in the EEOC charge. *See, e.g., Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 304 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019) (concluding that, where the administrative charge indicated that retaliatory behavior was ongoing, the plaintiff's alleged retaliatory termination was the "predictable culmination" of the alleged retaliatory conduct and thus "reasonably related" to the charge allegations); *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 718 (D. Md. 2013) (noting that, where a plaintiff alleged an act of continuing retaliation and sex discrimination, her termination (or constructive discharge) was the "predictable culmination" of both "the earlier alleged course of discriminatory and retaliatory conduct"). This principle is even more compelling where an EEOC investigation is ongoing at the time of discharge—constructive or otherwise, because investigation of the discharge would naturally arise from investigation of the allegations underlying the EEOC charge. *See Parker*, 915 F.3d at 306.

That said, courts have also concluded that a constructive discharge claim has not been exhausted where it was not explicitly set forth in, or reasonably related to, the administrative complaint, or would not be expected to flow from investigation of same. *See, e.g.*, *Sullivan v. Perdue Farms, Inc.*, 133 F. Supp. 3d 828, 835 (E.D. Va. 2015) (concluding that the plaintiff had not exhausted the constructive discharge claim where his charge did not include the intolerable conditions that led to resignation, nor had he noted a continuing violation in his charge); *McGraw v. Volvo Car USA, LLC*, No. 222CV04635BHHMHC, 2023 WL 10950864, at *6 (D.S.C. Oct. 31,

2023), *report and recommendation adopted,* No. 2:22-CV-4635-BHH, 2024 WL 959228 (D.S.C. Mar. 6, 2024) (concluding that plaintiff's constructive discharge was not exhausted where it occurred almost a year after the last date of discrimination identified in the charge, where the plaintiff did not allege a continuing action in the charge, and where she had not alleged the basis for the constructive discharge—hostile work environment, retaliation, and other intolerable conditions—in the charge).

Conscious of the imperative that the scope of EEOC charges are to be construed with "utmost liberality," *Balas*, 711 F.3d at 408, *supra*, and drawing all reasonable inferences in favor of the non-movant on a Rule 12(c) motion, the court declines to conclude at this time that Plaintiff failed to exhaust her constructive discharge claim merely because she did not amend her EEOC Charge (again) to include a claim for constructive discharge.  Plaintiff's constructive discharge claim is based on allegations that Defendant "restrict[ed] [her] to a part-time position with a low hourly rate" and "den[ied] her opportunities to hold a full-time position, with a higher hourly rate," thus "starv[ing]-out" Plaintiff, and forcing her to resign.  Such allegations, save the forced resignation, were contained in her EEOC Charge and Amended EEOC Charge.  (ECF No. 1 ¶¶ 21–22.)  She also identified the discriminatory practices as ongoing.  (ECF No. 18-1 at p. 2–5.) An investigation of the alleged constructive discharge thus would "naturally have arisen from an investigation" of the allegations in her EEOC charges, as the "predictable culmination" of the alleged discriminatory conduct.  *See Parker*, 915 F.3d at 306, and *Jones*, 551 F.3d at 304, *supra*.

Defendant's reply does not compel a different result.  First, although somewhat ambiguous, to the extent Defendant asserts that Plaintiff fails to a state a claim for constructive discharge based on the substance of her allegations (and not exhaustion), it was improperly raised for the first time in a reply brief, thus denying Plaintiff a fair opportunity to respond.  *See De Simone v. VSL*

*Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("Generally, 'new arguments cannot be raised in a reply brief' before the district court.") (quoting *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013)).   Regardless, Defendant's challenge is not compelling.   A plain and appropriately favorable reading of Plaintiff's Complaint shows that she alleges she was constructively discharged based on Defendant's discriminatory conduct set forth in the EEOC charges.

Moreover, while the court agrees with Defendant that the "predictable culmination" language in *Jones* and *Murphy-Taylor* pertained to claims for retaliation for filing a charge of discrimination, the court disagrees that such a narrow application of the principle is appropriate on a Rule 12(c) motion particularly in view of the Fourth Circuit's admonition that the court is to construe Plaintiff's EEOC charges with  "utmost liberality" to include allegations that would have naturally arisen from their investigation. *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)).   The court therefore declines to dismiss Plaintiff's constructive discharge claim for failure to exhaust her administrative remedies.

### 2.   *Sex Discrimination Claim*

#### i.   August 2017 Denial of Promotion

As to Plaintiff's sex discrimination claim, Defendant offers multiple arguments.   First, Defendant argues that Plaintiff's sex discrimination claim is untimely to the extent Plaintiff bases the claim on the August 2017 Denial of Promotion, because she did not file her EEOC charge within 300 days of the discrete act.   (ECF No. 18 at p. 9–11.)   Plaintiff counters that this basis of her sex discrimination claim survives because the August 2017 Denial of Promotion was "part of a continuous series of violative acts."   (ECF No. 21-1 at p. 7.)

Contrary to Plaintiff's contention, failure to promote is a "discrete act" that "occur[s] on the day that it happen[s]."   *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 114

(2002); *see Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) ("Because failure to promote is a discrete act of discrimination, the continuing violation doctrine does not apply here and cannot save Williams's untimely claims." (citation omitted)). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Because the August 2017 Denial of Promotion is a discrete act that occurred on August 7, 2017, more than 300 days before Plaintiff filed her EEOC charge on August 6, 2018, Plaintiff's sex discrimination claim – to the extent it is based on that act – is untimely. Accordingly, to the extent Plaintiff's sex discrimination claim is based on the August 2017 Denial of Promotion, the claim will be dismissed.

                i.   <u>May 2018 Offer Withdrawal</u>

Defendant asserts that Plaintiff's sex discrimination claim in relation to the May 2018 Offer Withdrawal should also be dismissed because Plaintiff's allegations demonstrate that she was ineligible for promotion in May 2018 pursuant to the CBA. (ECF No. 18 at 10–11.) Plaintiff objects to the court's consideration of the CBA at this stage and argues that her Complaint sufficiently alleges a claim for sex discrimination based on the May 2018 Offer Withdrawal, including specific allegations that Defendant routinely relaxed and waived qualification requirements for male coworkers. (ECF No. 21-1 at p. 8.) As set forth above, the court declines to consider the CBA in ruling on the Motion. Therefore, the court cabins its analysis to the sufficiency of the pleading on its face.

Plaintiff's Count I alleges that she was repeatedly passed over for promotion in favor of her male counterparts—evidenced by the lack of female employees in such positions and Defendant's practice of treating male applicants more favorably than female applicants, including

Plaintiff.  (ECF No. 1 ¶ 14.)  "To establish a *prima facie* case of sex discrimination for failure to promote, a plaintiff must prove by a preponderance of the evidence that she (1) belongs to a protected group; (2) applied for the positions at issue; (3) was qualified for those positions; and (4) was rejected under circumstances that give rise to an inference of unlawful discrimination." *Bailey v. Ares Grp., Inc.*, 803 F. Supp. 2d 349, 355 (D. Md. 2011).  *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) ("Under the *McDonnell Douglas* framework, [the plaintiff] can establish a prima facie case [of a disparate treatment for failure to promote] by showing that (1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination.").

Based on Plaintiff's allegations, the May 2018 Offer Withdrawal may concern two different employment actions in relation to her sex discrimination claim: (1) the May 2018 Offer Withdrawal related to promotion to a driver position, which she would have sought in April 2018 had she not already accepted another offer; and (2) the May 2018 Offer Withdrawal concerning her acceptance of the promotion to Pre-Load Supervisor. With respect to the former, Plaintiff's allegations foreclose her claim.  She admits she was not qualified for the driver position, but contends she would have been qualified had she not accepted the Pre-Load Supervisor position. (ECF No. 1 ¶ 8.)  Moreover, Plaintiff does not allege that she applied for a promotion; in fact, the allegations are plain that she did not.   Therefore, Plaintiff fails to state a claim for sex discrimination based on the May 2018 Offer Withdrawal as it pertains to promotion to a driver position.  *Bailey*, 803 F. Supp. 2d at 355, *supra*.

With regard to the May 2018 Offer Withdrawal as it pertains to the Pre-Load Supervisor position, Plaintiff alleges that she was denied the promotion when Defendant withdrew her offer

in May 2018.  Defendant relegates its response to a mere footnote urging that the May 2018 Offer

Withdrawal claim basis is not "supported by well-pled facts" that it was based on Plaintiff's sex.

(ECF No. 18 at p. 9 n.7.)  Plaintiff did not, at least expressly, respond to Defendant's footnote.

And Defendant contends the court should therefore find that Plaintiff concedes the argument.

The Fourth Circuit "warn[s] against ruling on a 'minimally addressed' issue based on

arguments only raised in a footnote, as it is 'unfair' to the opposing party 'and would risk an

improvident or ill-advised opinion on the legal issues raised.'"  *Harvey v. Cable News Network,*

*Inc.*, 48 F.4th 257, 278 (4th Cir. 2022); *see Sanders v. Callender*, No. CV DKC 17-1721, 2018

WL 337756, at *7 (D. Md. Jan. 9, 2018) (noting that the Fourth Circuit's reasoning "has led district

courts to decline to consider arguments only raised in a footnote") (citing cases).  Defendant's

anemic presentation of the point set forth in footnote 7 is in stark contrast to its fulsome argument

on this claim elsewhere in the main text of its brief.  The court, therefore, is well within its

discretion not to consider Defendant's footnote argument especially in view of the fact that

Plaintiff otherwise offers full-throated opposition to Defendant's arguments on the merits of this

claim and allegation.  In any event, Defendant's scarce footnote argument on the issue fails to meet

its burden to persuade the court that Plaintiff "cannot prove any set of facts" in support of her claim

that she was subject to sex discrimination.  *See Castillo*, 2021 WL 825974, at *3, *supra*.

### 3.  *Retaliation Claim*

Finally, Defendant argues that, to the extent Plaintiff bases her retaliation claim on the

August 2017 Denial of Promotion or the May 2018 Offer Withdrawal, she fails to state a claim

because these events preceded her alleged protected activity—filing her EEOC charge on August

6, 2018.  (ECF No. 18 at p. 8–9.)   In response, Plaintiff clarifies that her retaliation claim pertains

to Defendant's failure to promote her in November 2018, not the August 2017 Denial of Promotion

21

or May 2018 Offer Withdrawal. (ECF No. 21-1 at p. 6.) Plaintiff thus concedes that her retaliation claim is not based on any allegation that preceded her EEOC charge. *Id.* Accordingly, for clarity of the record, the court will grant the Motion on this basis, which is to say Count II shall not proceed on the basis of alleged unlawful retaliation that preceded the EEOC Charge.

## IV.   CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Partial Rule 12(c) Motion to Dismiss (ECF No. 18) will be granted in part and denied in part as follows: granted as to Plaintiff's MFEPA claims under Counts I, II, and III; granted as to Count I to the extent it is based on the August 2017 Denial of Promotion and/or denial of a driver position promotion for the bid list posted in April 2018; granted as to Count II to the extent it is based on the August 2017 Denial of Promotion and/or the May 2018 Offer Withdrawal; and denied in all other respects.[12]

July 26, 2024

/s/_____
Julie R. Rubin
United States District Judge

---

[12] Based on the Complaint and the court's disposition of the Motion, no count will be dismissed in full. Defendant remains a party to this action and all counts in Plaintiff's Complaint will proceed in some fashion subject to the dismissals noted herein. In view of the foregoing, and because the court has neither granted Plaintiff leave to amend nor engaged in a futility analysis, it will exercise its discretion to dismiss without prejudice the specific allegations identified in this memorandum opinion and accompanying order. *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (citing *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985)); *Harden v. Budget Rent A Car Sys., Inc.*, --- F. Supp. 3d. ---, No. CV GLS 22-1790, 2024 WL 1299356, at *17–18 (D. Md. Mar. 27, 2024).